UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK METIVIER,

    Plaintiff,

vs.

SUBURBAN MOBILITY AUTHORITY
FOR REGIONAL TRANSPORTATION, and
THOMAS LACOMBE, DAN DIRKS and
BETH GIBBONS, in their individual and
official capacities,

    Defendants.
    _____/

CASE NO. 06-15429
HON. LAWRENCE P. ZATKOFF

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
Federal Building, in the City of Port Huron, State of
Michigan, on the 30th day of September, 2008

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendants' Motion for Summary Judgment. Plaintiff has filed a response, and Defendants filed a reply. The Court finds that the facts and legal arguments pertinent to Defendants' Motion are adequately presented in the parties' papers, and the decision process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, Defendants' Motion for Summary Judgment is GRANTED.

## II. BACKGROUND

Plaintiff worked as a mechanic for Defendant Suburban Mobility Authority for Regional Transportation ("SMART") from April 1978 to December 2004, when he was terminated by SMART for violating the company's "Attendance and Time Clock Rules" (the "Policy"). During his employment, Plaintiff suffered from back problems and he missed work for variable periods as a result, including about 20 months in 1996 and 1997 and an undetermined length in October 2003. The October 2003 absence was covered by the Family and Medical Leave Act, 29 U.S.C. §2601, et seq. ("FMLA"). Plaintiff claims that he tried to talk to a SMART representative about reapplying for FMLA coverage for his back problems during the fall of 2004. Plaintiff claims he did not receive any FMLA forms until about the time of his termination, and he and his physician did not complete any FMLA forms until the day after his termination. Plaintiff also claims he sought the assistance of the Employee Assistance Program regarding problems he was having at work during the fall of 2004, although the documentation supplied by Plaintiff demonstrates that he first sought such assistance on the day he was terminated.

During the period between 2002 and Plaintiff's termination, Mazyn Barash ("Barash") was the president of UAW Local 417, the union in which Plaintiff was a member (the "Union"). In 2004, the Union publicly alleged that funds of SMART (public monies) had been misappropriated, specifically in the course of the relationship between SMART and International Bus, a company that performed repairs for SMART (which had previously been performed by SMART employees). The Union believed and publicly proclaimed that SMART was paying International Bus for incomplete or nonexistent repairs, and the Union's proclamations incensed SMART executives. In the same year (2004), Plaintiff served as a Union steward for a brief period of time. Plaintiff claims that once he became a Union steward, he was treated differently at work, had his job threatened if he did not give up the steward position and was on a "hit list" to be fired during 2004.

As to the absences which served as the basis for his termination, Plaintiff was given notice of each unexcused absence that resulted in a violation of the Policy. Each of the unexcused absences

prior to the last unexcused absence on November 23, 2004, led to progressively harsher discipline, as follows:

(1) late twice in a pay period which resulted in a written warning for first offense (violations on March 12 and 14, 2003);

(2) late three times in a 20 day period which resulted in a one day working suspension at 90% pay for second offense (March 24 and 26, 2003, April 8, 2003);

(3) did not punch in on May 23, 2003 or out on May 24, 2003 leading to three day working suspension at 80% for third offense;

(4) absent with no time in sick bank on March 1, 2004, which constituted a second third offense and a three day working suspension; and

(5) absent with no time in sick bank on November 16, 2004, resulting in a five day unpaid suspension for fourth offense.

Plaintiff's last violation of the Policy was on November 23, 2004. On that day, Plaintiff asked his supervisor if Plaintiff's start time could be moved back so that Plaintiff could have gas service restored to his home. Plaintiff's start time was pushed back two hours, with the understanding that he would still put in a full eight hour day. Plaintiff showed up four hours after his normal start time and then only worked four hours. Plaintiff then put in a sick leave form for four hours but, because he had no sick time left in his bank (a fact he had been advised of by his foreman the previous day), the absence constituted a violation of the Policy.

On December 7, 2004, Plaintiff met with a Union representative and Keith Taylor ("Taylor"), a Superintendent of Maintenance for SMART, who notified Plaintiff of the latest violation and gave him an opportunity to respond. Plaintiff did not offer any mitigating circumstances for his violation of the Policy on November 23, 2004, and Taylor terminated Plaintiff. Plaintiff filed a grievance under the terms of the Union's collective bargaining agreement. The grievance proceeded through four steps, and Plaintiff and his Union representative had the opportunity to present Plaintiff's position at each step. At the end of the grievance process, Plaintiff's termination was upheld. At that time, the Union withdrew Plaintiff's grievance and elected not to proceed to arbitration.

Plaintiff filed a 15 count Complaint in this Court. The Court retained jurisdiction over

3

Counts I-XII, each of which alleges a violation of federal law or the U.S. Constitution. The Court declined supplemental jurisdiction over Plaintiff's state law claims in Counts XIII-XV. Defendants now move the Court to dismiss Counts I-XII of the Complaint, with prejudice.

### III. LEGAL STANDARD

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings, combined with any affidavits in support show that no genuine issue as to any material fact remains and that the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)(citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV. ANALYSIS

**A.    Count I - First Amendment Equal Protection Violation**

In Count I, Plaintiff alleges that Defendants violated his 14th Amendment right to equal protection under the law when they intentionally and arbitrarily discriminated against Plaintiff by firing him "in response to his protest of discriminatory and ethnically intimidating actions taken against his union chairperson [Barash] [which action was] irrational and not rationally related to the actions taken by Plaintiff." Plaintiff claims that similarly situated employees were not subject to the same discrimination and adverse treatment. In his response brief, Plaintiff also suggests that his equal protection rights were violated because of his association with Barash and his role as Union steward. This First Amendment "association" claim was not pled (at least expressly) in Plaintiff's Complaint.

In order to establish a *prima facie* case of retaliation for engaging in protected First Amendment activity, Plaintiff must show: (1) he was engaged in constitutionally protected speech/association; (2) he was subjected to adverse actions that caused him to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse actions were motivated at least in part by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). In addition, because Plaintiff was a public employee, it must be demonstrated that his involvement was related to a matter of public interest or concern and that the interest in taking up the public concern outweighs Defendants' interests. *Pickering v. Bd. of Educ. of Twp. High Sch. Distr.*, 391 U.S. 563, 568 (1968).

In this case, the Court finds that Plaintiff has failed to establish the first element of the *prima facie* case. In a light most favorable to Plaintiff, Plaintiff has suggested that he

> was a supporter of Barash and associated with him, and was himself a union steward. Defendants sought to rid themselves of Barash and everyone associated with him, which included Plaintiff. As Plaintiff testified, other employees allegedly had attendance problems but were given preferential treatment, whereas Plaintiff was not afforded special treatment because of his association and union role.

Plaintiff does not, however, offer any evidence to support any of those assertions, but for the fact

5

that Plaintiff was a Union steward for a couple of months. Plaintiff has asserted that once he became a Union steward, he was treated differently at work, had his job threatened if he did not give up the steward position and was on a "hit list" to be fired during 2004. Plaintiff has suggested that other Union personnel were aware of, were witness to, and/or communicated to him such problems. There is nothing in the record (such as affidavits or deposition testimony of such persons), however, to support Plaintiff's claims. As the nonmoving party, Plaintiff must do more than show that there is some metaphysical doubt as to the material facts; he must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *Moore, supra.* As Plaintiff has failed to do so, the Court cannot find that Plaintiff has met his burden.

In addition, Plaintiff admitted at his deposition that (1) he did not take any action that supported Barash, (2) he was not present when Barash spoke publicly, and (3) he did not assist Barash in Union activities such as creating or disseminating information:

> Q. Now it says that a group of several SMART mechanics, including yourself and union chairman Mazyn Barash, reported the information that they possessed to law enforcement. Did you talk to anyone in law enforcement?
>
> A. I did not personally, no.
>
> Q. Did you gather information to give to Mazyn Barash to give to law enforcement?
>
> A. No, not to my knowledge.

Plaintiff further admitted that he was never told he could not talk with Barash and he provides no details about how he was harassed for union activity. Finally, Plaintiff's position as a Union steward lasted only a month or two, and he did not hold the Union steward position at the time of his last unexcused absence or his termination.

In addition, as Defendants accurately argue, Plaintiff has not set forth any evidence of any ethnically intimidating actions against Barash, as reflected by Plaintiff's deposition testimony:

> Q. What have you done to support [Barash] as a Chaldean member of the workforce at SMART?

6

> A. He's ethnic and I support his ethnicity, even if he wasn't a union rep, just a co-worker, and I did before he was a union rep as a co-worker.
>
> Q. What did you do to show that support?
>
> A. Well, nothing readily comes to mind specific, but if there's somebody putting him down for his origin or his religion, I'm in his corner automatically.
>
> Q. But you didn't see that happening did you?
>
> A. Excuse me?
>
> Q. You didn't see anyone putting him down because of religion did you?
>
> A. I don't recall that, no.
>
> Q. Did you report to anyone at SMART that you thought Mr. Barash was being discriminated against based on his ethnic background?
>
> A. I don't recall.
>
> Q. And you did not make a report of discrimination for yourself, did you?
>
> A. No, My association . . . .
>
> Q. But you never went to human resources and filed a complaint of discrimination on Mr. Barash's behalf, did you?
>
> A. No.

As the foregoing testimony demonstrates, Plaintiff acknowledges that he did not engage in protected activity with respect to any alleged discrimination against Barash or himself. In fact, the testimony reflects that Plaintiff was not even witness to or aware of any ethnic or religious discrimination against Barash or himself.

For the reasons set forth above, the Court concludes that Defendants are entitled to summary judgment on Count I.

**B.    Counts II and III - Fourteenth Amendment Due Process Violations**
**Count IX - Fourteenth Amendment Legitimate Expectation of Continuing Employment**

In response to Defendant's Motion, Plaintiff does not contest that Defendants are entitled to summary judgment on these Counts. Due process safeguards for terminating a public employee require that he be given notice and an opportunity to be heard at a meaningful time and a meaningful manner. *Brock v. Roadway Express, Inc.*, 481 U.S. 252 (1987). In this case, Plaintiff received

adequate due process through the pre-termination progressive discipline imposed pursuant to the terms of the collective bargaining agreement ("CBA") between the Union and SMART, which discipline also included warnings of what punishment would result from future transgressions (*i.e.*, "progressive discipline up to and including termination"). In addition, once Plaintiff was terminated, he had the opportunity to be heard (and he was heard and represented) throughout the four step grievance process. Moreover, at the conclusion of the grievance process, the Union (and Plaintiff) elected not to proceed to arbitration and withdrew the grievance, thus waiving his right to a due process claim. *See Dean v. City of Bay City*, 239 Fed.Appx. 107, 2007 U.S.App. LEXIS 11805 (2007). Accordingly, the Court concludes that Defendants are entitled to summary judgment with respect to Counts II, III and IX.

**C.      Count IV - Racial Discrimination**

Plaintiff did not respond to Defendants' Motion with respect to Count IV, and Plaintiff does not allege or claim that he was discriminated against personally on the basis of his race. As set forth in Section IV.A. above, Plaintiff admitted at his deposition that he never filed a complaint of discrimination on Barash's behalf such that any retaliation could have been directed at Plaintiff for engaging in protected activity related to race. Further, not only is there a lack of genuine issue of material fact on this claim, but Plaintiff admittedly failed to provide SMART with adequate notice of the alleged discrimination such that Defendants could have an opportunity to correct the situation; therefore, Plaintiff's race discrimination claim is not viable. *See Blankenship v. Parke Care Centers*, 123 F.3d 868 (6th Cir. 1997), *cert. den.*, 522 U.S. 1110 (1998); *Elezovic v. Ford Motor Co.*, 472 Mich. 408 (2005). Accordingly, the Court concludes Defendants are entitled to summary judgment with respect to Count IV.

**D.      Count V - Hostile Work Environment**

In Count V, Plaintiff alleges that Defendants' actions subjected him to a hostile work environment. The Defendants' actions upon which Plaintiff relies are the same ones discussed thus far, *i.e.*, racial harassment and ethnic intimidation of Barash and retaliation against Barash and his

8

supporters such as Plaintiff. Plaintiff again alleges that he was a vocal supporter of Barash and he condemned the alleged ethnic and racial discrimination of Barash. For the reasons discussed above, however, the Court concludes that such allegations are unsupported by any evidence proffered by Plaintiff. And, as Plaintiff has admitted that he did not complain of any discrimination against Barash or himself, Defendants could not have had an opportunity to correct the situation with respect to Plaintiff. *See Blankenship, supra; Elezovic, supra.* Accordingly, the Court concludes Defendants are entitled to summary judgment with respect to Count V.

### E. Count VI - Whistleblower Action

Plaintiff does not contest Defendants' Motion with respect to Count VI. For the reasons discussed above, the Court concludes that Plaintiff did not engage in any activity to which he would be entitled to whistleblower protection. More specifically, the Court again notes that (1) Plaintiff never communicated to SMART or any of the Defendants that he or Barash had been discriminated against, and (2) Plaintiff never communicated to law enforcement any information regarding the alleged SMART-International Bus situation, such that there was any whistleblowing activity for which Plaintiff could have been subject to retaliation by SMART or any of the other Defendants. Accordingly, the Court concludes that Defendants are entitled to summary judgment on Count VI.

### F. Count VII - Constitutional Violations by SMART

Plaintiff claims that SMART has a custom or practice of violating employees' constitutional rights by (a) failing to adequately train supervisors regarding discriminatory behavior, (b) ignoring complaints of discriminatory behavior, and (c) retaliating against employees who report and/or make a complaint of discriminatory behavior. As discussed above, Plaintiff has failed to produce evidence to support the claims in parts (b) and (c). A municipal or governmental entity defendant can be found liable for the violation of a constitutionally protected right only if the plaintiff can establish that an officially executed policy, or the toleration of a custom of such municipality or governmental entity leads to, or causes, or results in the deprivation of such rights. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). *Respondeat superior* is not available as a theory of recovery in a

9

section 1983 action. *Monell*, 436 U.S. at 690-91.

Therefore, in order to have a viable action against SMART, Plaintiff would have to demonstrate that SMART itself was the wrongdoer. *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992). Plaintiff would have to identify an official policy connected to SMART and demonstrate that the execution of that policy caused the injury about which Plaintiff complains. *See Monell*, 436 U.S. at 690-91; *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993); *Coogan v. City of Wixom*, 820 F.2d 117 (6th Cir. 1987). And, absent a formal policy, Plaintiff must establish that the deprivation was caused by a governmental custom. *Fox v. Van Oosterum*, 176 F.3d 342, 353 (6th Cir. 1999) (citing *Monell*, 436 U.S. at 690-91).

In support of this claim, Plaintiff states only "[t]he evidence presented shows that SMART disliked Barash and allowed co-workers to harass him, in violation of the law. Then, because Plaintiff supported Barash, he was likewise terminated, even though their actions were protected." Even if the Court assumes that SMART "allowed co-workers to harass" Barash, once again there is no evidence that Plaintiff overtly supported Barash in any manner such that his termination could proximately be related to Plaintiff's support of Barash. Accordingly, the Court concludes that Plaintiff has not provided the Court with any evidence that SMART policies led to, caused or resulted in a deprivation of his constitutional rights. Defendants' Motion is therefore granted with respect to Count VII.

### G. Count VIII - First Amendment Violations

As discussed in Section IV.A. above, the Court concludes that Plaintiff cannot satisfy the first element of a *prima facie* case of a First Amendment retaliation claim, *i.e.*, that he engaged in constitutionally protected speech/association. Accordingly, Defendants' Motion is granted with respect to Count VIII.

### H. Count X - Family Medical Leave Act Violation

Plaintiff alleges that SMART violated his rights under the FMLA. This claim is frivolous. First, the absence on November 23, 2004, the one which resulted in his fifth violation of the Policy

10

and his termination, had absolutely no relationship to a sickness, injury or other condition related to the FMLA. Second, although Plaintiff claims that he "repeatedly talked to clerical about FMLA and the status, etc." during the fall of 2004, Plaintiff did not submit anything pertaining to FMLA until after his termination. In fact, the note from his doctor to allegedly support his FMLA-related illness was dated December 8, 2004, a day **after** he was terminated. Third, Plaintiff had (at least) twice before been on FMLA leave for issues related to his back. As such, it is implausible that Plaintiff was not aware what he needed to do in order to have his absences be treated as FMLA leave. Finally, Plaintiff has not argued, let alone provided any evidence, that any of the absences for which he was disciplined were related to any problems with his back or involved any other situation which the FMLA covers. Accordingly, the Court grants Defendants' Motion as it relates to Count X.

**I.     Counts XI and XII - Americans with Disabilities Act - Failure to Accommodate and Wrongful Discharge/Retaliation**

Plaintiff brought two claims alleging that SMART violated the Americans with Disabilities Act, 41 U.S.C. §12101, et seq. ("ADA"). Plaintiff did not respond to Defendants' Motion with respect to the ADA claims. More significantly, Plaintiff never filed a discrimination claim with the Equal Employment Opportunity Commission ("EEOC") in order to obtain a right to sue letter. A right to sue letter from the EEOC is a condition precedent to a plaintiff bringing an ADA suit. *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000). Accordingly, the Court holds that Plaintiff's ADA claims are barred and that Defendants are entitled to summary judgment on Counts XI and XII.

**J.     Individual Defendants**

The Court also notes that Plaintiff has produced no evidence that any of the individual defendants discriminated against him or otherwise violated any of his rights under federal law. Plaintiff never met Defendant Thomas LaCombe, SMART's director of human resources, and admitted that he didn't know of anything that LaCombe did to harm his employment with SMART.

Even in his response brief, Plaintiff only said that LaCombe **may** have been consulted about Plaintiff's termination but Plaintiff was unable to confirm that LaCombe gave a final stamp of approval to Plaintiff's termination. The most Plaintiff could say is that LaCombe admitted that Plaintiff **may** have been one of the people complaining about the SMART/International Bus relationship. The Court finds that such assertions do not rise to a level of creating a genuine issue of material fact that LaCombe acted wrongfully with respect to any of Plaintiff's claims.

Similarly, Plaintiff fails to direct the Court to any evidence that demonstrates that Dan Dirks, SMART's general manager, participated in Plaintiff's termination or that Plaintiff and Dirks ever had a conversation about anything other than Plaintiff's "profession." Dirks testified that he was not involved in the decision to terminate Plaintiff and only learned of it after the fact. Finally, as to Defendant Beth Gibbons, a manager of public relations and a SMART spokesperson, Plaintiff could only point to the fact that Gibbons acknowledged that "she had heard Plaintiff's name mentioned." When Plaintiff was asked whether he was "aware of any facts regarding Beth Gibbons that leads you to believe she did something to harm you in your employment at SMART?", Plaintiff said "I don't know how to answer that."

In addition, Dirks and Gibbons are entitled to qualified immunity. As they did not participate in the decision to terminate Plaintiff, they could not have engaged in any actions which allegedly violated Plaintiff's rights. LaCombe also would have qualified immunity as the Human Resources Director, as his role with respect to Plaintiff's termination was a discretionary one. As it is undisputed that Plaintiff had the requisite number of attendance violations to justify his termination, the Court finds that LaCombe's actions, if any, were reasonably taken. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Accordingly, in addition to the reasons set forth in Sections IV.A through IV.I above, the Court holds that Plaintiff's claims against the individual defendants are hereby dismissed.

## V. CONCLUSION

Accordingly, and for the reasons set forth above, Defendants' Motion for Summary Judgment is GRANTED. Plaintiff's cause of action is therefore DISMISSED WITH PREJUDICE. Judgment shall be entered accordingly.

IT IS SO ORDERED.


S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: September 30, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 30, 2008.

S/Marie E. Verlinde
Case Manager
(810) 984-3290